(33 South. 115.)

No. 14,659.

LANDRY et al. v. HENDERSON, Sheriff.

(Dec. 1, 1902.)

LEVEE DISTRICT—CONTRIBUTIONS ON SUGAR CANE—VALIDITY.

1. The authority granted by Act No. 97 of 1890 to the board of commissioners of the At-chafalaya Basin levee district to impose a local contribution on sugar, molasses, and syrup, does not warrant the imposition of a contribution on sugar cane; and the penalties denounced by that act, and by Act No. 65 of 1894, against those who remove from the district produce on which the local assessment has not been paid, is not incurred by so removing sugar cane.

(Syllabus by the Court).

Action by Landry & Lanier against George Henderson, sheriff and ex officio tax collector. Judgment for plaintiff was certified from the court of appeals.

PROVOSTY, J. By Act No. 97 of 1890, a levee district, styled the "Atchafalaya Basin Levee District," is created, and a board of commissioners is placed in charge of the affairs of the district, with authority to impose a local contribution, "not to exceed twenty five cents per thousand pounds of sugar; seven and one half cents per barrel of syrup, five cents per barrel of molasses * * * produced in said district," etc. It is also provided that in all cases the contribution shall be paid "before the produce is removed from the respective parishes," and it is made a misdemeanor, punishable by fine, to evade the payment of the contribution, or to aid or abet in such evasion.

The purpose of the act is declared in its title to be, among other things, "to authorize the levy of a forced contribution or special assessment on cotton, sugar, rice, syrup, molasses and esculents produced upon the lands subject to taxation under the provisions of this act."

Beyond what is here stated, there is nothing in the act to indicate an intention on the part of the legislature to authorize the imposition of a local contribution on sugar cane as contradistinguished from "sugar, syrup or molasses," the products from sugar cane.

By Act No. 65 of 1894 it is provided that "produce liable to special assessment or forced contribution shall not be removed from the limits of the parish or levee district where the same has been raised until the special assessment or forced contribution thereon shall have been paid; * * * and that for any violation of this law the owners of the produce so removed shall be liable for and forfeit and pay * * * to the levee board within whose levee district such parish is situated, double the amount of the special as-

sessment or forced contribution for which said produce is or was liable," etc.

Section 4 of the same act provides that the payment of local contributions imposed by the levee boards of the state shall be secured by first lien on the produce on which the same is imposed, and also on all the property of the person owning the produce situated within the parish, and that this lien on the produce shall be prescribed in ten days from the removal of the produce from the parish, and in five days in case of a sale to a bona fide purchaser.

Sugar cane grown on land within the limits of the Atchafalaya Basin levee district was sent out of the district, and sold outside of the district to a refinery, and was manufactured into sugar; and this sugar has been seized to satisfy the local contribution imposed in accordance with the law quoted above (that is, the contribution of 25 cents on every 1,000 pounds of sugar produced in said district), and the owner of the refinery and of the sugar has enjoined the seizure, claiming that neither he nor the sugar is liable to the contribution; and the judges of the court of the Third circuit, before whom the case is pending, have certified to this court for instructions the following question, viz.:

"Is sugar manufactured by a factory situated in Iberia parish, but outside the levee district, from cane raised on lands situated within said district, and bought by said factory, liable for the forced contribution or produce tax claimed?"

In this question, as propounded, no distinction is observed between a purchaser of cane before removal from the parish where grown, and a purchase after removal. Under the act of 1894 there would seem to be a difference between the two cases. In the one case the purchaser would have become the owner before removal, and by removal would have incurred the penalty of the act, if, indeed, the contribution bears on cane. In the other case the purchaser would have become the owner after the removal, and would not have incurred the penalty of the act. Taken in connection with the statement of facts, however, the question evidently relates to a purchase after removal; and we are thus precise merely with a view to avoiding future misconstruction.

To the question propounded the answer must be in the negative. The contribution is authorized to be paid on sugar, syrup, and molasses, specifically, and not on cane. Doubtless the idea of the legislature was to authorize the laying of contribution upon the produce of the protected lands, no matter in what shape such produce might be; and doubtless the words "sugar, syrup, and molasses" were used as descriptive, not so much of the property to be taxed, as of the measure of the tax. The lands themselves receive the benefit resulting from the expenditure of the avails of the contribution, and the idea, doubtless, was to tax them, and to let the quantum of the tax be measured by the quantum of their produce: but that idea, however much it may be inferred from the known theory under which the tax is imposed, is not expressed, and the rule is well settled that delegated authority to exercise the power of taxation cannot be eked out by inference.

Under the rubrics, "Construction of Local Power," and "Construction as to Taxables," Cooley, in his work on Taxation (2d Ed., pp. 276, 279), states the law on the subject as follows:

"When the power is found to have been conferred, if any question arises upon its extent or application, the rule is, the power must be strictly construed. It is a reasonable presumption that the state, which is the depositary and source of all authority on the subject, has granted in unmistakable terms all it has intended to grant at all. Municipal authorities, therefore, when they assume to tax, must be able to show warrant therefor in the words of the grant, which alone can justify their action. They are to assume that they can tax only as the state, in its wisdom, has thought proper to permit; and, if the state has erred in the direction of strictness, the legislature alone can correct the evil."

"A like rule applies as regards the subjects upon which the power to tax may be employed. It does not follow that, because the state has conferred the authority, it has intended it should be exercised to the same unlimited extent that it might be by the state itself. On the contrary, the discretion to select subjects of taxation rests with the state, and is supposed to have been exercised in granting municipal powers. On this ground it has been held that a power conferred by a city charter to tax 'property within the city'

would authorize the taxing of visible property only, and not credits. And it has been held that a power to tax personal property would not, without further specification, authorize the taxation of corporate stocks."

We therefore answer the question in the negative.

It is noteworthy that the view here taken has impressed itself on the legislature, which, by Act No. 140 of the session of 1902, has amended section 10 of the act of 1890 by adding thereto the words, "four cents per ton of cane when the same is removed from the limits of said district and beyond the limits of any levee district of the state, * * * and when sugar cane, and seed cotton are removed therefrom before being manufactured or ground, and baled, both the grower and manufacturer, or ginner, shall be liable in solido for the payment thereof."